## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

**GENERAL STAR NATIONAL**
**INSURANCE COMPANY,**

     **Plaintiff,**

     **v.**                               **CIVIL ACTION NO.: 1: 12-cv-1094**

**MONICA CORLEY, WEST TENNESSEE**
**APPRAISAL SERVICES, STACY ATKINS,**
**CHRISTOPHER J. BERRY, MICHAEL**
**CARUTHERS, RAYMOND FRAZIER,**
**JEREMY HOLLOWAY, NEKEYA**
**HOLLOWAY, GRAYLAND JACKSON,**
**DAVID JONES, III, LATOYA JONES,**
**SHAKIRA SHACKELFORD, JASON**
**WINSTON, and PARAMOUNT GROUP**
**INTERNATIONAL, LLC,**

     **Defendants.**

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, GENERAL STAR NATIONAL INSURANCE COMPANY, and for its Complaint for Declaratory Judgment against Defendants, MONICA CORLEY, WEST TENNESSEE APPRAISAL SERVICES, STACY ATKINS, CHRISTOPHER J. BERRY, MICHAEL CARUTHERS, RAYMOND FRAZIER, JEREMY HOLLOWAY, NEKEYA HOLLOWAY, GRAYLAND JACKSON, DAVID JONES, III, LATOYA JONES, SHAKIRA SHACKELFORD, JASON WINSTON, and PARAMOUNT GROUP INTERNATIONAL, LLC, states as follows:

## PARTIES AND JURISDICTION

1.       At all times relevant hereto, GENERAL STAR NATIONAL INSURANCE COMPANY ("General Star") was an Ohio corporation with its principal place of business located in Stamford, Connecticut.

2.       At all times relevant hereto, General Star was authorized to do business issuing insurance policies in the State of Tennessee.

3.       At all times relevant hereto, MONICA CORLEY ("Corley"), an individual, was a licensed certified appraiser of residential real estate property doing business as WEST TENNESSEE APPRAISAL SERVICES ("West Tennessee"). Corley was also a citizen, and upon information and belief intends to remain a citizen, of Jackson, Tennessee and was subject to the jurisdiction of this Court.

4.       At all times relevant hereto, West Tennessee was a residential real estate appraisal business owned and operated by Corley. At all times relevant, West Tennessee's principal place of business was located at 68 Greendale Drive, Jackson, Tennessee 38305 and was subject to the jurisdiction of this Court.  (Corley and West Tennessee are collectively referred to herein as the "Insureds.")

5.       At all times relevant hereto, STACY ATKINS ("Atkins") was an adult resident of Davidson County, Tennessee.

6.       At all times relevant hereto, CHRISTOPHER J. BERRY ("Berry") was an adult resident of Davidson County, Tennessee.

7.       At all times relevant hereto, MICHAEL CARUTHERS ("Caruthers") was an adult resident of Rutherford County, Tennessee.

8.       At all times relevant hereto, RAYMOND FRAZIER ("Frazier") was an adult

resident of Rutherford County, Tennessee.

9.     At all times relevant hereto, JEREMY HOLLOWAY and NEKEYA HOLLOWAY (collectively the "Holloways") were adult residents of Fulton County, Georgia.

10.    At all times relevant hereto, GRAYLAND JACKSON ("Jackson") was an adult resident of Davidson County, Tennessee.

11.    At all times relevant hereto, DAVID JONES, III ("D. Jones") was an adult resident of Davidson County, Tennessee.

12.    At all times relevant hereto, LATOYA JONES ("L. Jones") was an adult resident of Wayne County, Michigan.

13.    At all times relevant hereto, SHAKIRA SHACKELFORD ("Shackelford") was an adult resident of Wayne County, Michigan.

14.    At all times relevant hereto, JASON WINSTON ("Winston") was an adult resident of Wilson County, Tennessee.

15.    At all times relevant hereto, PARAMOUNT GROUP INTERNATIONAL, LLC ("Paramount") was a Tennessee Limited Liability Company authorized to transact business in the State of Tennessee with its principal place of business in Nashville, Tennessee.  (Atkins, Berry, Caruthers, Frazier, the Holloways, Jackson, D. Jones, L. Jones, Shackelford, Winston, and Paramount are collectively referred to herein as "Claimants.")

16.    Claimants have alleged that they purchased undeveloped real estate lots in the development known as "Great Valley Lakes" located in Hardeman County, Tennessee. Claimants have further alleged that they obtained construction loans to build homes on lots based upon appraisals provided by the Insureds regarding the value of the property and homes in the surrounding area, and that the Insureds inspected and reported on construction progress prior to

construction loan disbursement.   Claimants are named herein only as potentially interested parties as a result of a certain claim that they have asserted against the Insureds.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## SUMMARY OF ACTION

19.     This action arises out of a controversy between the parties regarding two Real Estate Appraisers Errors & Omissions Insurance Policies (the "Policies") issued by General Star to Corley.  General Star brings the instant action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to rescind the Policies.  Alternatively, General Star seeks a declaration that it owes no duty to defend or indemnify the Insureds under one of the Policies (subsequently defined as the "08/09 Policy") as it relates to the lawsuit filed by Claimants against the Insureds, among others, in the Chancery Court for Hardeman County, Tennessee, captioned *Stacey Atkins, et al. v. Southeastern Properties, Inc., et al.¸* case no. 16702 (the "Underlying Lawsuit").

20.     There exists an actual controversy between the parties that requires a declaration by this Court of the rights and obligations under the Policies.

21.     Specifically, General Star seeks a judicial determination that there is no coverage under the Policies and it has no duty to defend or indemnify the Insureds in connection with the Underlying Lawsuit as the Policies are void *ab initio* as a result of material misrepresentations

made by Corley in her application for the Policies upon which General Star relied to its detriment in issuing the Policies to Corley.  Alternatively, General Star seeks a declaration that it owes no duty to defend or indemnify the Insureds under the 08/09 Policy as there is no coverage for the Underlying Lawsuit pursuant to the terms of certain exclusions in the 08/09 Policy and/or there is no duty to indemnify the Insureds for certain types of damages sought by the Claimants as they do not fall within the definition of "Damages" under the 08/09 Policy.

## FACTUAL BACKGROUND

### Licensure and Past Disciplinary History

22.     In or about December 2002, Corley became licensed as a certified residential real estate appraiser when she was issued certificate number CR-3117 by the Tennessee Real Estate Appraiser Commission (the "Commission").

23.     The Commission is a state licensing, administrative, or regulatory board that regulates and disciplines real estate appraisers in the state of Tennessee.

24.     The purpose of the Commission, according to its website, is "To regulate real estate appraisers in accordance with federal and state laws, rules, and policies."  *See* http://www.tn.gov/commerce/boards/treac/whatwedo.shtml.    The    stated    mission    of    the Commission is as follows: "The Real Estate Appraiser Commission strives to protect the public welfare by ensuring that only qualified persons are licensed or certified and that all licensees uphold the highest appropriate professional standards of practice, independence and competency." *Id.*

25.     Pursuant to Tenn. Code Ann. §§62-39-308 and 62-39-326, the Commission may discipline the holder of a certificate as a state certified real estate appraiser upon a finding of a violation of any of the standards for appraisals and appraisal practice as set forth in this chapter

and the rules and regulations promulgated by the Commission.

26.     On or around July 13, 2007, a disciplinary complaint was filed against Corley by or before the Commission, styled *In the Matter of Monica Corley*, Case No. L07-APP-RBS-2007068161, as a result of an appraisal report Corley prepared on or about March 5, 2007 of real property located at 106 Elnora Circle, Bolivar, Tennessee. The Commission investigated Corley as a result of this disciplinary complaint.

27.     Corley responded to the disciplinary complaint on or around July 30, 2007.

28.     Upon information and belief, Corley was aware of the disciplinary complaint on or before July 30, 2007.

29.     On December 27, 2007, Corley signed a Consent Order in regard to this disciplinary complaint, which was approved and entered by the Commission.  A true and correct copy of the December 27, 2007 Consent Order is attached hereto as **Exhibit A**.

30.     In this December 27, 2007 Consent Order, the Commission found and Corley agreed that she had violated the Uniform Standards of Professional Appraisal Practice ("USPAP") Ethics Provision by creating a misleading appraisal, which in turn was a violation of Tenn. Code Ann. §62-39-329.  As a result of her appraisal activities in violation of the USPAP Ethics Provision and the Tennessee statute, the Commission disciplined Corley, and Corley agreed to pay a civil penalty of $1,000.00 upon execution of the Consent Order.

31.     A second disciplinary complaint was filed against Corley on or about October 19, 2007, by or before the Commission, styled *In the Matter of Monica Corley*, Case No. L07-APP-RBS-2007083881, as a result of an appraisal report Corley prepared on or about September 9, 2006 of real property located at 1210 N. Highland Avenue, Jackson, Tennessee. The Commission investigated Corley as a result of this disciplinary complaint.

32.     A third disciplinary complaint was filed against Corley in 2008 by or before the Commission, styled *In the Matter of Monica Corley*, Case No. L08-APP-RBS-2008000661, as a result of an appraisal report Corley prepared on or about September 17, 2007 of real property located at 230 Chester Levee Road, Jackson, Tennessee. The Commission investigated Corley as a result of this disciplinary complaint.

33.     On March 12, 2008, Corley signed a Consent Order in regard to these second and third disciplinary complaints, which was approved and entered by the Commission.  A true and correct copy of the March 12, 2008 Consent Order is attached hereto as **Exhibit B**.

34.     In this March 12, 2008 Consent Order, the Commission found and Corley agreed that she had violated several USPAP rules in preparing her appraisal reports, including the USPAP Competency Rule and USPAP Standard Rules 1-1(a), 1-2(e), 1-3(a) and (b), 1-4(a) and (b), 2-1(a) and (b), 2-2(b)(viii), which in turn violated Tenn. Code Ann. §62-39-329.  As a result of her appraisal activities in violation of the USPAP Rules and Tennessee statute, the Commission disciplined Corley.  Corley agreed to pay a civil penalty of $3,000.00 upon execution of the Consent Order, she was ordered to complete a 30-hour Report Writing Course within three months of execution of the Consent Order, and Corley was placed on probation for six months in which she was ordered to have another appraiser review and sign all of her appraisal reports.

### The Application for the 07/08 Policy

35.     On September 22, 2007, Corley completed and signed a Real Estate Appraisers Errors & Omissions Insurance Application (the "2007 Application").  A true and correct copy of the 2007 Application is attached hereto as part of **Exhibit C**.

36.     The 2007 Application stated: "For you to be eligible for this program, the

response to questions 1 – 4 below must all be 'true'." Question 4 stated:

>  4.  There have been no claims reported and/or pending circumstances which could result in a claim against the applicant within the past 5 years.

37.  Corley answered "true" to Question 4.

38.  The 2007 Application further stated:

>  **Fraud Warning.** (Not applicable in Nebraska, Vermont or Virginia): Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purposes of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

39.  The 2007 Application also stated, immediately preceding the signature line:

>  **IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT. SHOULD A POLICY BE ISSUED IT WILL ATTACH TO THE POLICY.** … I declare that the information submitted herein is true to the best of my knowledge and becomes a part of my Professional Liability application. I understand that an incorrect or incomplete statement could void my protection.

40.  Corley submitted the completed and signed 2007 Application to General Star or its representatives for the purpose of obtaining an insurance policy from General Star.

**The 2007/08 Policy**

41.  In reliance upon Corley's representations in the 2007 Application, including her response to Question 4, General Star issued a Real Estate Appraisers Errors & Omissions Insurance Policy to Corley, Policy No. NJA995289B, for the Policy Period of October 21, 2007 to October 21, 2008 (the "07/08 Policy"). The 2007 Application was attached to and formed part of the 07/08 Policy, a true and correct copy of which is attached hereto as **Exhibit C**.

42.  The Declarations Page to the 07/08 Policy identifies that the Named Insured is Monica Corley.

43.     The introduction to the 07/08 Policy states, in pertinent part:

**GENERAL STAR NATIONAL INSURANCE COMPANY**, hereinafter called the Company, agrees with the **Named Insured** as shown in the Declarations which are made part of this Policy; in consideration of the payment of the premium, and in reliance upon the statements on the application and the Declarations Page and subject to the limit of liability, exclusions, conditions and other terms of this policy, as follows:

44.     In Section X – General Conditions, the 07/08 Policy states:

N.   **Declarations and Application:** By acceptance of this policy, all **Insureds** agree that the statements in the application are the **Insureds'** agreements and representations, that they shall be deemed material, that this policy is issued in reliance upon the truth of such representations that this policy embodies all agreements existing between the **Insureds** and the Company or any of its agents related to this insurance.

45.     The 07/08 Policy was endorsed to include West Tennessee as an Additional Insured, "but only as respect claims arising out of any negligent act, error, omission or Personal Injury in the rendering or failure to render Professional Services by any individual or entity specified in Section II., PERSONS INSURED, of the policy."

**The Application for the 08/09 Policy**

46.     On October 21, 2008, Corley completed and signed a Real Estate Appraisers Errors & Omissions Insurance Application (the "2008 Application").  A true and correct copy of the 2008 Application is attached hereto as part of **Exhibit D**.

47.     In Section 2 of the 2008 Application, it stated: "To be eligible for this program the responses to questions 1 – 4 must be true."  Questions 3 and 4 stated:

3.      The applicant has not been disciplined or investigated by any state licensing, administrative or regulatory board as a result of appraisal activities within the past 5 years.

4.      There have been no claims reported and/or pending circumstances which could result in a claim made against the applicant within the past 5 years.

48.     Corley answered "true" to Questions 3 and 4.

49.     The 2008 Application further stated:

> **Fraud Warning:**
> **Notice to Applicants of all states except Colorado, New York, and Pennsylvania: Any person who knowingly, and with the intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purposes of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties and denial of insurance benefits.**

50.     The 2008 Application also stated, immediately preceding Corley's signature:

> **IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED IT WILL ATTACH TO THE POLICY.  … I declare that the information submitted herein is true to the best of my knowledge and becomes a part of my Professional Liability application.**

51.     Corley submitted the completed and signed 2008 Application to General Star or its representatives for the purpose of obtaining an insurance policy from General Star.

**The 08/09 Policy**

52.     In reliance upon Corley's representations in the 2008 Application, including her responses to Questions 3 and 4, General Star issued a Real Estate Appraisers Errors & Omissions Insurance Policy to Corley, Policy No. NJA995289C, for the Policy Period of October 21, 2008 to October 21, 2009 (the "08/09 Policy").  The 2008 Application was attached to and formed part of the 08/09 Policy, a true and correct copy of which is attached hereto as **Exhibit D**.

53.     The Declarations Page to the 08/09 Policy identifies that the Named Insured is Monica Corley.

54.     The introduction to the 08/09 Policy states, in pertinent part:

**GENERAL STAR NATIONAL INSURANCE COMPANY,** hereinafter called the Company, agrees with the **Named Insured,** in consideration of the payment of the premium, and in reliance upon the statements on the applications and the Declarations Page and subject to the Limits of Liability, exclusions, conditions and other terms of this policy, as follows:

55.     Subject to the other terms and conditions of the 08/09 Policy, Section I of the 08/09 Policy states that:

> The Company will pay on behalf of the **Named Insured** all sums which the **Named Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Named Insured** during the **Policy Period** and first reported to the Company in writing during the **Policy Period** … arising out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by the **Named Insured**; …"

56.     The 08/09 Policy defines "Claim" in relevant part as "a demand for money, … the filing of **Suit** or the institution of arbitration or mediation proceedings naming the **Named Insured**, claiming **Damages** and alleging an act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services**."

57.     The 08/09 Policy defines "Claim Expenses," among other items, as "fees charged by an attorney(s) designated by the Company and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by the Company…"

58.     The 08/09 Policy defines "Damages," in pertinent part, to mean "compensatory judgments, settlement or awards, but does not include punitive or exemplary damages, fines or penalties, sanctions, the return of fees or other consideration paid to the **Named Insured**, or that portion of any award or judgment caused by trebling or multiplication of actual damages under federal or state law."

59.     The 08/09 Policy defines "Suit" to mean "a civil adjudicatory proceeding in a court of law."

60.    In Section VI – Exclusions, the 08/09 Policy states, in pertinent part, that:

The Company has no obligation under this policy to pay **Damages** or **Claims Expenses**, or to provide a defense, in connection with any **Claim**:

A.    based on or arising out of a dishonest, fraudulent, criminal or malicious act or omission, or intentional misrepresentation, (including, but not limited to, actual or alleged violations of state or federal anti-trust, price-fixing, restraint of trade or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or with the knowledge of the **Named Insured**;

\*         \*         \*

T.    based on or arising out of the gaining in fact of any personal profit or advantage to which the **Named Insured** is not legally entitled, including misappropriation, conversion, embezzlement, commingling or defalcation of funds or other property; …

61.    In Section IX – General Conditions, as amended by endorsement, the 08/09 Policy states:

K.    **Application Representations:**

By acceptance of this policy, the Named Insured agrees that the statements in the application are the Named Insured's agreements and representations, that each matter represented shall be deemed material if it was made with the actual intent to deceive or increases the risk of loss, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Named Insured and the Company.

62.    Section IX of the 08/09 Policy also provides:

L.    **Reimbursement:**

While the Company has no duty to do so, if the Company pays **Damages** or **Claims Expenses**:
1.    within the amount of the applicable Deductible, or
2.    in excess of the applicable Limit of Liability, or
3.    Under a reservation of rights to seek reimbursement, and it is determined that the Company is entitled to reimbursement,

upon written demand, the **Named Insured** shall repay such amounts to the Company within (30) days.  Failure to pay any amount indicated may lead to policy termination.

63.     The 08/09 Policy was endorsed to include West Tennessee as an Additional Insured, "but only with respect to Claims arising out of any act, error, omission or Personal Injury in the rendering or failure to render Professional Services by the Named Insured and subject to all the terms and conditions of the policy."

**The Underlying Lawsuit**

64.     On or about April 23, 2009, Claimants filed the Underlying Lawsuit against the Insureds, among other defendants.  A true and correct copy of the Amended Complaint for Damages filed in the Underlying Lawsuit on or about May 28, 2009 is attached hereto as **Exhibit E**.

65.     In general, the Underlying Lawsuit seeks the recovery of damages from the Insureds as a result of their preparation of allegedly inflated appraisals for the Claimants' properties, which Claimants used to obtain construction loans for their properties, as well as the Insureds' alleged failure to inspect and report on the progress of construction of the prior to disbursements from such construction loans.

66.     The Underlying Lawsuit purports to assert seven separate causes of action against the defendants, including the Insureds, for breach of contract, violations of the Tennessee Consumer Protection Act, fraud, conversion, negligent misrepresentation, civil conspiracy, and negligence.

67.     Among other relief, the Underlying Lawsuit seeks judgment in the amount of $10,000,000.00 and an award of treble damages, attorney's fees, and interest.

68.     The Insureds reported the Underlying Lawsuit to General Star in June 2009 – during the Policy Period of the 08/09 Policy.  General Star agreed to provide a defense to the Insureds pursuant to the terms of the 08/09 Policy and subject to a strict reservation of rights.

## COUNT I

### Declaratory Judgment for Rescission of 08/09 Policy Based on
### Corley's Material Misrepresentations in the 2008 Application

69.     General Star repeats and realleges paragraphs 1 to 68 of this Complaint for Declaratory Judgment as if fully set forth herein.

70.     In the 2008 Application submitted by Corley to General Star for purposes of obtaining the 08/09 Policy, Corley affirmatively represented in response to Question 3 that she had not been disciplined or investigated by any state licensing, administrative or regulatory board as a result of appraisal activities within the past five (5) years.

71.     Corley's 2008 Application and, specifically, her response to Question 3, was false, incorrect and contained misrepresentations because Corley had been investigated and disciplined as a result of her appraisal activities by the Tennessee Real Estate Appraisers Commission in response to three disciplinary complaints filed in 2007 and 2008.  Specifically, in the December 27, 2007 Consent Order, Corley was assessed a civil penalty of $1,000.00 by the Commission for her appraisal activities.  In addition, in the March 12, 2008 Consent Order, Corley was assessed a civil penalty of $3,000.00 by the Commission for her appraisal activities, was required to complete an additional training class, and her license was placed on probation for six months.

72.     Corley was aware of the prior investigations and discipline when she completed, signed and submitted the 2008 Application in October 2008.  Indeed, Corley signed both Consent Orders prior to her execution of the 2008 Application.

73.     In light of the discipline imposed and the investigation undertaken by the Commission prior to October 2008, the correct answer to Question 3 on the 2008 Application was "false."  Corley knew the correct answer to Question No. 3 on the 2008 Application was

"false."

74.     In the 2008 Application submitted by Corley to General Star for purposes of obtaining the 08/09 Policy, Corley also affirmatively represented in response to Question 4 that there were no claims reported and/or pending circumstances which could result in a claim against her within the past five (5) years.

75.     The 2008 Application and, specifically, her response to Question 4 of the 2008 Application, was false, incorrect and contained misrepresentations as she failed to identify any of the circumstances set forth in the disciplinary complaints and/or Consent Orders, namely the violations of the USPAP Ethics Provision, USPAP Competency Rule, the multiple violations of USPAP Standard Rules, and the violations of Tennessee law, any one of which could have resulted in a claim against Corley.  Corley was aware of these circumstances and the facts set forth in the complaints and Consent Orders when she completed, signed and submitted the 2008 Application to General Star in October 2008.

76.     In light of the circumstances set forth in the disciplinary complaints and Consent Orders, the correct answer to Question 4 on the 2008 Application was "false."  Corley knew the correct answer to Question 4 on the 2008 Application was "false."

77.     Corley's misrepresentations in the 2008 Application were made with the intent to deceive General Star into issuing the 08/09 Policy to Corley although she did not qualify for General Star's insurance program.

78.     As stated on the face of the 2008 Applications, Corley was not eligible for General Star's Appraisers Errors and Omissions Liability Program if she answered "false" to any one of Questions 1 through 4 on the 2008 Application.

79.     General Star relied upon Corley's misstatements in the 2008 Application in

approving Corley for the 08/09 Policy and issuing the 08/09 Policy to Corley.

80.     The misrepresentations made by Corley were material and materially increased the risk of loss to General Star because General Star would not have issued the 08/09 Policy to Corley, or would have issued the 08/09 Policy on materially different terms and for greater premium, had she responded "false" to either Questions 3 or 4 in the 2008 Application.

81.     By virtue of the misrepresentations made in the 2008 Application, General Star acted to its detriment because if the true facts had been disclosed to General Star, General Star would not have issued the 08/09 Policy or would have issued the Policy on materially different terms and for greater premium.

82.     General Star has or will return the premium paid by Corley for the 08/09 Policy that it is seeking to rescind.

83.     Because Corley made material misrepresentations in the 2008 Application for the 08/09 Policy, the 08/09 Policy is void *ab initio* and of no effect whatsoever.

84.     By reason of the above, General Star is entitled to a declaration that a) the 08/09 Policy is void *ab initio* due to the material misrepresentations made by Corley in the 2008 Application for the 08/09 Policy; and b) by virtue of rescission of the 08/09 Policy, General Star has no duty to defend or indemnify the Insureds in connection with the Underlying Lawsuit.

## COUNT II

### Declaratory Judgment for Rescission of 07/08 Policy Based on Corley's Material Misrepresentations in the 2007 Application

85.     General Star repeats and realleges paragraphs 1 to 84 of this Complaint for Declaratory Judgment as if fully set forth herein.

86.     In the 2007 Application submitted by Corley to General Star for purposes of obtaining the 07/08 Policy, Corley affirmatively represented in response to Question 4 that there

were no claims reported and/or pending circumstances which could result in a claim against her within the past five (5) years.

87.     The 2007 Application and, specifically, her response to Question 4 of the 2007 Application, was false, incorrect and contained misrepresentations as she failed to identify any of the circumstances set forth in the July 13, 2007 disciplinary complaint, namely the violations of the USPAP Ethics Provision, which could have resulted in a claim against Corley.  Corley was aware of these circumstances and the facts set forth in the disciplinary complaint when she completed, signed and submitted the 2007 Application to General Star in September 2007.

88.     In light of the circumstances set forth in the July 13, 2007 disciplinary complaint, the correct answer to Question 4 on the 2007 Application was "false."  Corley knew the correct answer to Question 4 on the 2007 Application was "false."

89.     Corley's misrepresentations in the 2007 Application were made with the intent to deceive General Star into issuing the 07/08 Policy to Corley although she did not qualify for General Star's insurance program.

90.     As stated on the face of the 2007 Applications, Corley was not eligible for General Star's Appraisers Errors and Omissions Liability Program if she answered "false" to any one of Questions 1 through 4 on the 2007 Application.

91.     General Star relied upon Corley's misstatements in the 2007 Application in approving Corley for the 07/08 Policy and issuing the 07/08 Policy to Corley.

92.     The misrepresentations made by Corley were material and materially increased the risk of loss to General Star because General Star would not have issued the 07/08 Policy to Corley, or would have issued the 07/08 Policy on materially different terms and for greater premium, had she responded "false" to Question 4 in the 2007 Application.

93.     By virtue of the misrepresentations made in the 2007 Application, General Star acted to its detriment because if the true facts had been disclosed to General Star, General Star would not have issued the 07/08 Policy or would have issued the Policy on materially different terms and for greater premium.

94.     General Star has or will return the premium paid by Corley for the 07/08 Policy that it is seeking to rescind.

95.     Because Corley made material misrepresentations in the 2007 Application for the 07/08 Policy, the 07/08 Policy is void *ab initio* and of no effect whatsoever.

96.     By reason of the above, General Star is entitled to a declaration that a) the 07/08 Policy is void *ab initio* due to the material misrepresentations made by Corley in the 2007 Application for the 07/08 Policy; and b) by virtue of rescission of the 07/08 Policy, General Star has no duty to defend or indemnify the Insureds in connection with the Underlying Lawsuit.

## COUNT III

### Declaratory Judgment that Coverage is Excluded under the 2008/09 Policy for Any Dishonest, Fraudulent, Criminal or Malicious Act or Omission, or Intentional Misrepresentation by the Insureds

97.     General Star repeats and realleges paragraphs 1 to 96 of this Complaint for Declaratory Judgment as if fully set forth herein.

98.     Exclusion A to the 08/09 Policy excludes coverage for Claims based on or arising out of a dishonest, fraudulent, criminal or malicious act or omission, or intentional misrepresentation committed by, at the direction of, or with the knowledge of the Named Insured.

99.     The Underlying Lawsuit alleges, *inter alia*, that the Insureds engaged in fraudulent and/or deceptive business practices/transactions toward Claimants, such as preparing

inflated appraisals, and utilized deceptive means for the purpose of enticing and encouraging Claimants to enter into loans for grossly overvalued property and homes.  The Underlying Lawsuit further alleges that the Insureds knowingly made false representations of existing or past material facts, and unlawfully took and/or converted to their own use certain property of the Claimants, to wit: loan proceeds for the subject properties.  The Underlying Lawsuit also alleges that the Insureds participated in an unlawful scheme, by means of fraud and identity theft, to coerce the Claimants to purchase lots and homes at a grossly inflated price for the purpose of depriving the Claimants of their monies, and leaving Claimants with huge loans in excess of the value of the properties.

100.    Based upon the foregoing allegations, the Underlying Lawsuit asserts, among other theories, causes of action for violation of the Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-104), fraud, conversion, and civil conspiracy.

101.    There is no coverage for such allegations and causes of action pursuant to Exclusion A.

102.    Accordingly, General Star is entitled to a declaration that it owes no duty to defend or indemnify the Insureds in connection with the Underlying Lawsuit.

## COUNT IV

### Declaratory Judgment that Coverage is Excluded under the 08/09 Policy for Any Dishonest, Fraudulent, Criminal or Malicious Act or Omission, or Intentional Misrepresentation by the Insureds

103.    General Star repeats and realleges paragraphs 1 to 102 of this Complaint for Declaratory Judgment as if fully set forth herein.

104.    Exclusion T to the 08/09 Policy excludes coverage for Claims based on or arising out of the gaining in fact of any personal profit or advantage to which the Named Insured is not

legally entitled, including misappropriation, conversion, embezzlement, commingling or defalcation of funds or other property.

105.    The Underlying Lawsuit alleges, *inter alia*, that the Insureds engaged in fraudulent and/or deceptive business practices/transactions toward Claimants, such as preparing inflated appraisals, and utilized deceptive means for the purpose of enticing and encouraging Claimants to enter into loans for grossly overvalued property and homes.  The Underlying Lawsuit alleges that the Insureds knowingly made false representations of existing or past material facts, and unlawfully took and/or converted to their own use certain property of the Claimants, to wit: loan proceeds for the subject properties.  The Underlying Lawsuit also alleges that the Insureds participated in an unlawful scheme, by means of fraud and identity theft, to coerce the Claimants to purchase lots and homes at a grossly inflated price for the purpose of depriving the Claimants of their monies, and leaving Claimants with huge loans in excess of the value of the properties.

106.    Based upon the foregoing allegations, the Underlying Lawsuit asserts, among other theories, causes of action for violation of the Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-104), fraud, conversion, and civil conspiracy.

107.    There is no coverage for such allegations and causes of action pursuant to Exclusion T.

108.    Accordingly, General Star is entitled to a declaration that it owes no duty to defend or indemnify the Insureds in connection with the Underlying Lawsuit.

## COUNT V

### Declaratory Judgment that there is No Coverage Under the 08/09 Policy for any award for Damages Outside the 08/09 Policy's Definition of "Damages"

109.    General Star repeats and realleges paragraphs 1 to 108 of this Complaint for Declaratory Judgment as if fully set forth herein.

110.    Subject to the other terms and conditions of the 08/09 Policy, Section I of the 08/09 Policy states that it provides coverage for "Damages" as that term is defined by the 08/09 Policy.

111.    Punitive or exemplary damages, fines or penalties, sanctions, the return of fees or other consideration paid to the Named Insured, and that portion of any award or judgment caused by trebling or multiplication of actual damages under federal or state law is expressly excluded from the meaning of "Damages" under the 08/09 Policy.

112.    The Underlying Lawsuit seeks an award for treble damages and attorney's fees. In addition, the Underlying Lawsuit seeks judgment in the amount of $10,000,000.00, which may include some amount of punitive or exemplary damages, fines or penalties, sanctions, the return of fees or other consideration paid to the Named Insured.

113.    There is no coverage for any award including such damages pursuant to the 08/09 Policy's Insuring Agreement and definition of "Damages."

114.    Accordingly, to the extent judgment is entered against the Insureds in the Underlying Lawsuit, General Star is entitled to a declaration that it owes no duty to indemnify the Insureds in connection with any such damages.

## COUNT VI

### Declaratory Judgment that the Insureds Must Reimburse Claims Expenses

115.    General Star repeats and realleges paragraphs 1 to 114 of this Complaint for

Declaratory Judgment as if fully set forth herein.

116.    Subject to the other terms and conditions of the 08/09 Policy, Section IX of the 08/09 Policy states that, if the company pays "Damages" or "Claims Expenses" under a reservation of rights to seek reimbursement, and it is entitled to reimbursement, the Named Insured shall repay such amounts to the Company.

117.    General Star has reserved its rights to seek reimbursement of Damages and Claims Expenses.

118.    Should the Court determine that General Star is entitled to rescind the 08/09 Policy and/or that no coverage exists for the Underlying Lawsuit under the 08/09 Policy, General Star is entitled to reimbursement by Corley of any Damages and Claim Expenses paid, including reimbursement of all costs and fees incurred by General Star to defend the Insureds in the Underlying Lawsuit.

WHEREFORE, Plaintiff, GENERAL STAR NATIONAL INSURANCE COMPANY, respectfully requests that judgment be entered in its favor and against the Defendants, and prays that this Court:

a)    Enter an Order finding that the 08/09 Policy is void *ab initio* and of no effect whatsoever based upon material misrepresentations in the 2008 Application;

b)    Enter an Order finding that the 07/08 Policy is void *ab initio* and of no effect whatsoever based upon material misrepresentations in the 2007 Application;

c)    Enter an Order finding and declaring that General Star is not obligated to defend or indemnify the Insureds in connection with the Underlying Lawsuit, or for any claim based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the conduct and facts, circumstances and situations described in the Underlying Lawsuit;

d)    Enter an Order awarding Plaintiff all costs and expenses it incurred in this matter;

e)      Enter an Order directing Corley to reimburse General Star for Damages and Claim Expenses incurred by General Star, including those fees and costs incurred in defending the Insureds in the Underlying Lawsuit; and

f)      Grant any such other and further relief which this Court deems just and proper.

## **JURY DEMAND**

Plaintiff, GENERAL STAR NATIONAL INSURANCE COMPANY, hereby demands

trial by jury.

Respectfully submitted,

LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC

BY:     /s/ Nicole M. Grida
        RONALD L. HARPER, Tennessee BPR #15470
        NICOLE M. GRIDA, Tennessee BPR #25416
        Brinkley Plaza
        80 Monroe Avenue, Suite 800
        Memphis, Tennessee  38103
        (901) 527-0214
        ron.harper@leitnerfirm.com
        nicole.grida@leitnerfirm.com

        Attorneys for Plaintiff, GENERAL STAR NATIONAL
        INSURANCE COMPANY

*Of Counsel:*
DAVID A. WILFORD, Illinois ARDC #6217049
CHRISTOPHER T. CONRAD, Illinois ARDC #6255778
WILFORD CONRAD LLP
Flint Creek Corporate View
760 W. Main Street, Suite 210
Barrington, Illinois 60010
(224) 848-4721
Fax: (224) 425-5865
dwilford@wilfordconrad.com
cconrad@wilfordconrad.com